UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROCHELLE DRIESSEN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 3:14-cv-1300 (VAB) |
| : | |
| ROYAL BANK INTERNATIONAL, a : | |
| brand of the Royal Bank of Scotland Group, : | |
| : | |
| Defendant. : | |

## RULING OF DISMISSAL

Plaintiff, Rochelle Driessen, filed an Amended Complaint on January 30, 2015 in response to the Court's dismissal of this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Because the Amended Complaint does nothing to remedy the fatal defect of her original Complaint, the action is now dismissed with prejudice.

The plaintiff initiated this action *pro se* by filing a Complaint [Doc. No. 1] on September 9, 2014 against "Royal Bank International" and moving for leave to proceed *in forma pauperis* [Doc. No. 2]. The case was referred to Magistrate Judge Martinez, who reviewed the plaintiff's filings pursuant to 28 U.S.C. § 1915. Judge Martinez granted the *in forma pauperis* motion, but recommended that the Complaint be dismissed without prejudice [Doc. No. 6], issuing a Recommended Ruling of Dismissal [Doc. No. 7] on December 17, 2014. The plaintiff timely objected to the Recommended Ruling [Doc. No. 8], but the District Court approved and adopted the Recommended Ruling on January 6, 2015, ordering that if no amended complaint were filed by January 26, 2015, "a judgment will enter dismissing the action with prejudice" [Doc. No. 9]. Even though the plaintiff failed to comply with this Court's January 6 order and filed her

1

Amended Complaint four days after the specified deadline, the Court will entertain the plaintiff's late filing in light of her *pro se* status.

The statute that authorizes the court to grant *in forma pauperis* relief to a plaintiff contains the following protection against abuse of such status: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The plaintiff's Amended Complaint [Doc. No. 11] is nearly identical to her original Complaint. The only substantive difference is the addition of conclusory allegations that the defendant's previously alleged actions also violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. *See* Amended Complaint [Doc. No. 11] ¶¶ 6, 14, 15. The plaintiff's original Complaint had been dismissed with leave to amend on the grounds that it failed to "plausibly allege that the defendant had any actual involvement with the purported emails or lottery winnings." Recommended Ruling of Dismissal [Doc. No. 7], at 5. The Amended Complaint contains no new factual allegations against the defendant of any type, including those that would purport to connect the defendant to the purported emails or lottery winnings, and thus does nothing to address the fatal defect in the original Complaint, which was clearly identified and articulated in the Recommended Ruling.

Instead, the plaintiff has alleged an additional violation, of a completely different statutory scheme, predicated on the *same* alleged set of facts, which necessarily means that this claim, too, possesses the same fatal pleading defect—there has been no plausible allegation that

the defendant was involved in any of the activity alleged.[1]  Therefore, this new claim must be dismissed for the same reasons articulated in the Recommended Ruling and the January 6 Order.

The Recommended Ruling noted that the plaintiff's original Complaint "is virtually identical to another complaint the plaintiff filed in this court." Recommended Ruling of Dismissal [Doc. No. 7], at 4.  Indeed, there have been numerous cases filed by the plaintiff in which she sued commercial banks implausibly alleging, as she does in this case, that she was entitled to a large sum of money that a bank failed to transfer to her in violation of 15 U.S.C. § 1693(b) of the Electronic Funds Transfer Act ("EFTA").[2]  Adding a claim, unsupported by factual allegations that federal antitrust law was violated, does not differentiate the complaint in this action from these other complaints in such manner so that it now states a plausible claim on

---

[1]  Furthermore, the plaintiff has failed to allege any facts that would constitute a violation of Section 1 of the Sherman Antitrust Act.  Setting the price of a service (*see* Amended Complaint [Doc. No. 11] ¶¶ 14-15) does not constitute the type of "price-fixing" that is contemplated by federal antitrust law.  *See infra*.

[2]  *See*, *e.g.*, *Driessen v. Natwest Bank PLC*, No. 3:13-cv-00217-MPS (alleging that two banks, including The Royal Bank of Scotland, violated the EFTA by failing to transfer her purported European lottery winnings to her bank account); *Driessen v. United Nations*, No. 1:12-cv-08289-LAP (S.D.N.Y), transferred, No. 1:13-cv-20065-CMA (S.D. Fla.) (claiming that the defendant bank was liable under EFTA for failing to transfer her $1.2 million inheritance check to her bank account after she refused to pay the transfer fee); *Driessen v. Citibank, N.A.*, No. 4:13-cv-04018-LLP (D.S.D.) (alleging that the defendant bank violated EFTA by failing to remit her winnings to her bank account both times that she won the UK National Lottery); *Driessen v. Home Loan State Bank*, No. 1:12-cv-02220-MSK-KLM (D. Colo.) (alleging that the defendant bank violated EFTA by failing to transfer a £3.5 million prize to her); *Driessen v. Woodforest Nat'l Bank*, No. 3:12-cv-00091 (S.D. Ohio) (alleging that the defendant bank violated EFTA by failing to transmit $8.3 million allegedly deposited with the defendant bank by the United Nations for her benefit); *Driessen v. S. African Reserve Bank*, No. 4:12-cv-00309-RAS-DDB (E.D. Tex.) (claiming that the defendant bank wrongfully withheld $30.5 million in violation of EFTA); *see also Driessen v. Clinton*, No. 4:12-cv-00227-RC-ALM (E.D. Tex.) (claiming that U.S. Secretary of State Hillary Rodham Clinton informed her that she had inherited $10.5 million from a Nigerian relative but then unlawfully prevented the transfer of funds on the grounds that the funds were terrorist- and drug-related).  The Court may take judicial notice of Plaintiff's other lawsuits.  *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings[.]").

which relief may be granted.  All claims in this action shall therefore be dismissed with prejudice.

When faced with a *pro se* plaintiff who is proceeding *in forma pauperis*, a court "must liberally construe his pleadings, and must interpret his complaint to raise the strongest arguments it suggests," *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), and further "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).  Generally, however, an action may be dismissed with prejudice "where it appears that granting leave to amend is unlikely to be productive."  *Preston v. New York*, 223 F. Supp. 2d 452, 463 (S.D.N.Y. 2002).  For example, where amendment would be futile, "denial of an opportunity to amend is within the discretion of the District Court," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss," *Delollis v. Friedberg*, No. 13-1628-cv, slip op. at 5 (2d Cir. Feb. 9, 2015).

In this action, the plaintiff's original Complaint was given a liberal reading and the plaintiff was granted leave to amend.  The plaintiff subsequently failed to amend her Complaint in a manner that addressed the Court's clearly-expressed basis for dismissal.  There is no basis to believe that granting leave to amend a second time would induce the plaintiff to add the kind of allegations needed to establish a facially-plausible claim when she took no steps to do so with her first opportunity to amend.  *See*, *e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denying leave to replead because "the district court already gave [plaintiff] an opportunity to file an amended complaint designed to cure the very defect that remains"); *Cellular Technical Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 246-47 (D. Conn.

2009) (dismissing case with prejudice and without leave to amend because plaintiffs had already been given an opportunity to replead to cure identified deficiencies "and since they did not take advantage of that opportunity, the Court sees no reason to provide yet a third chance to plead [the same element]"). Under these circumstances, the Court determines that further amendment would be futile with respect to all claims in the plaintiff's Amended Complaint that were repeated from her original Complaint.

The new antitrust claim fails because of the same lack of facial plausibility. There are no new factual allegations regarding the defendant. The plaintiff's antitrust allegations amount, in their entirety, to the following:

> Defendant is in violation of 15 USC § 1 . . . by price fixing the cost of transfer fee of £650, and price fixing the cost of transfer fee of £650 for international transfers that exceeds the sum of one hundred thousand United States dollars under its Anti-Money Laundering Decree. . . . The anti-money laundering programs to guard against money laundering through financial institutions do not provide a fixed price for the international transfer of money pursuant to 31 USC § 5318(h)(1).

Amended Complaint [Doc. No. 11] ¶¶ 14-15. All the conduct alleged here, as throughout the Amended Complaint, was already alleged in the original Complaint, and thus the plaintiff asserts this purported antitrust violation against the defendant based solely on facts previously pleaded. Just as in the original Complaint, there is absolutely nothing in the Amended Complaint connecting the defendant to the conduct alleged to have occurred.

Even construing the Amended Complaint in the most liberal manner imaginable, the plaintiff has also wholly failed to allege a violation of Section 1 of the Sherman Antitrust Act. The statute is by its terms limited to collusive conduct—to contracts, combinations, and conspiracies that restrain the nation's domestic or foreign trade or commerce. *See* 15 U.S.C. § 1. The key inquiry therefore in any case brought under Section 1 is whether the challenged conduct

consists of concerted action between separate entities or "conduct that is 'wholly unilateral.'" *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (quoting *Albrecht v. Herald Co.*, 390 U.S. 145, 149 (1968)); *see also* VI Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1402a, at 10 (3d ed. 2010) ("A sharp distinction between unilateral and concerted action is apparent from the structure of the basic antitrust statute.  Sherman Act § 1 reaches concerted action in unreasonable restraint of trade[.]").

A business unilaterally setting the price of a service it provides is not the type of "price fixing" contemplated by federal antitrust prohibitions.  In fact, "setting one's own profit-maximizing price is entirely lawful under the antitrust laws."  VI Areeda & Hovenkamp ¶ 1402a, at 10.  Therefore, in addition to curing the previously-identified defects in this action, the plaintiff would also have had to add plausible allegations of concerted action by the defendant with others in order for this claim to survive.  *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010) ("Section 1 applies only to concerted action that restrains trade. . . .  And because concerted action is discrete and distinct, a limit on such activity leaves untouched a vast amount of business conduct."); *Copperweld*, 467 U.S. at 775 (1984) (holding that "the Sherman Act does not prohibit unreasonable restraints of trade as such—but only restraints effected by a contract, combination, or conspiracy—it leaves untouched a single firm's anticompetitive conduct").

In any event, as discussed *supra* with respect to the claims repeated from the original Complaint, allowing the plaintiff to replead concerning the antitrust claim would likewise be futile because the plaintiff has demonstrated no inclination to attempt to plead the necessary facts plausibly tying the defendant to the existing allegations, even when explicitly prompted to do so by the Court.  *See* Recommended Ruling of Dismissal [Doc. No. 7], at 5 ("the complaint in this

case does not plausibly allege that the defendant bank had any actual involvement with the purported emails or lottery winnings"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

For the reasons set forth above, the Court **DISMISSES WITH PREJUDICE** this action pursuant to 28 U.S.C. § 1915(e)(2)(B) on the ground that the Amended Complaint fails to state a claim upon which relief may be granted.

IT IS SO ORDERED.

   /s/ Victor A. Bolden_____
Victor A. Bolden
United States District Judge

Dated at Bridgeport, Connecticut,
this 18th day of March, 2015.